UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CAROLYN ROMASZ,
on behalf of A.H.N.,

       Plaintiff,

v.                         1:11-CV-1467
                           (GTS)
MICHAEL J. ASTRUE, Comm'r of Soc. Sec.,

       Defendant.
_____

APPEARANCES:                 OF COUNSEL:

LEGAL AID SOCIETY OF NORTHEASTERN NEW    MARY M. WITHINGTON, ESQ.
 YORK, INC,
 Counsel for Plaintiff
112 Spring Street
Suite 109
Saratoga Springs, NY 12866

U.S. SOCIAL SECURITY ADMIN.           DENNIS J. CANNING, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

   Currently before the Court, in this Social Security action filed by Carolyn Romasz ("Plaintiff") on behalf of her son, A.H.N., against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 11, 12.) For the reasons set forth below, Defendant's motion is denied and Plaintiff's motion is granted in part and denied in part.

I.      RELEVANT BACKGROUND

   A.      Factual Background

A.H.N. was born on June 22, 2000. At the time of his hearing, he was in the fifth grade. A.H.N.'s alleged impairments are attention deficit hyperactivity disorder ("ADHD"), Oppositional Defiant Disorder ("ODD"), Post Traumatic Stress Disorder ("PTSD") and depression.

   B.      Procedural History

On July 7, 2009, Plaintiff applied for Supplemental Security Income on A.H.N.'s behalf. Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On February 11, 2011, Plaintiff and A.H.N. appeared before the ALJ, but the hearing was postponed so that Plaintiff's counsel, who at the time was just recently retained, would have time to review A.H.N.'s file. (T. 36-41.) Plaintiff and A.H.N. again appeared before the ALJ on March 18, 2011, at which time a hearing was held. (T. 42-62.) The ALJ issued a written decision finding A.H.N. not disabled under the Social Security Act on April 1, 2011. (T. 19-35.) On October 11, 2011, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.      The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 17-25.) First, the ALJ found that A.H.N. was a "school-age child" pursuant to 20 C.F.R. § 416.926a(g)(2) on July 7, 2009 (the date the application for benefits was filed), and on April 1, 2011 (the date of the ALJ's decision). (T. 25.) Second, the ALJ found

2

that A.H.N. had not engaged in substantial gainful activity at any time. (*Id*.) Third, the ALJ found that A.H.N. suffers from ADHD, a severe impairment pursuant to 20 C.F.R. § 416.924(c). (*Id*.) Fourth, the ALJ found that A.H.N. does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I (the "Listings"). (*Id*.) Fifth, the ALJ found that A.H.N. does not have an impairment or combination of impairments that functionally equals an impairment set forth in the Listings. (T. 25-32.) Sixth, and finally, the ALJ concluded that A.H.N. has not been disabled, as defined by the Social Security Act, since July 7, 2009, the date his application was filed. (T. 32.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes three arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in failing to find that A.H.N.'s ADHD, ODD, PTSD and depression met or medically equaled Listings 112.04, 112.08 and 112.11. (Dkt. No. 11 at 14-19 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ erred in failing to find that A.H.N. has marked impairments in the domain of acquiring and using information. (*Id*. at 19-21.) Third, and finally, Plaintiff argues that the ALJ's decision is against the substantial weight of the evidence and is incorrect as a matter of law because he failed to develop the record and failed to properly explain his determination regarding Plaintiff's credibility. (*Id*. at 22-24.)

### B. Defendant's Argument

In response, Defendant first argues that the ALJ's decision that A.H.N.'s impairment did not meet or medically equal a Listing is supported by substantial evidence. (Dkt. No. 12 at 16-

18 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ's decision that A.H.N.'s impairment did not functionally equal a Listing was supported by substantial evidence. (*Id.* at 18-22.) Third, and finally, Defendant argues that the ALJ properly developed the record and that his decision regarding Plaintiff's credibility was supported by substantial evidence because her opinion was at odds with other evidence in the record.

### III.   RELEVANT LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. *See* 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*,

02 Civ.3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. *See* 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. *See* 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. In essence, "a child is [disabled under the Social Security Act] if his impairment is as severe as one that would prevent an adult from working." *Zebley v. Sullivan*, 493 U.S. 521, 529, 110 S. Ct. 885, 890 (1990).

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). *Id.* Equivalence to a listing can be either medical or functional. *See* 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. *See* 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for [oneself]; and (vi) [h]ealth and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## IV. ANALYSIS

### A. Whether the ALJ's Conclusion that A.H.N.'s Impairments Do Not Meet or Medically Equal a Listing is Supported By Substantial Evidence.

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 11 at 14-19 [Pl.'s Mem. of Law].) The Court would add the following analysis.

Plaintiff argues that the ALJ erred in failing to find that A.H.N.'s impairments medically meet or equal Listings 112.04 (mood disorders), 112.08 (personality disorders), and 112.11 (ADHD). To be sure, Plaintiff notes that in the first instance, the ALJ erred when he found that A.H.N.'s only severe impairment is ADHD.

Here, the ALJ found that A.H.N. "has the following severe impairment: ADHD" and explained that it "caused more than a slight abnormality, or a combination of slight abnormalities, which lead to more than minimal functional limitations." (T. 25.) No mention is made of the severity of A.H.N.'s other alleged impairments. At the next step, the ALJ found that A.H.N. "does not have an impairment or combination of impairments that meets or medically equals" a Listing. (*Id.*) By way of explanation, the ALJ notes that Listing 112.11 was considered but that "the requisite criteria for the relevant listings are absent from the school and medical records. Further, no treating or examining physician or teacher has indicated findings that would satisfy the requirements of any listed impairment." (*Id.*)

"Where an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07–CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010). *See also* 20 C.F.R. § 404.1523 (ALJ required to consider the

"combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").

Here, Plaintiff correctly notes that the ALJ only discussed A.H.N.'s other alleged impairments in a cursory fashion when considering functional equivalence. (T. 26-27.) Moreover, at step three of the sequential analysis, the ALJ did not sufficiently explain his reasons for finding that A.H.N.'s ADHD does not medically meet or equal Listing 112.11. An impairment will medically meet the level of severity under Listing 112.11 where there are medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity, and at least two of the age-appropriate criteria set forth in paragraph B2 of Listing 112.02. Here, the ALJ simply concluded that the requisite criteria are absent from the school and medical records and that no treating or examining physician or teacher has indicated findings that would satisfy the requirements of any listed impairment. (T. 25.) The ALJ's failure to explain his conclusion with a recitation of the facts or medical evidence is plain error. *See Hamedallah ex rel. E.B. v. Astrue*, No. 11-CV-939, 2012 WL 2403518, at *9 (N.D.N.Y. Jun. 25, 2012) (citing *Morgan o/b/o Morgan v. Chater*, 913 F. Supp. 184, 188-189 (W.D.N.Y. 1996) (holding that a one-sentence denial is insufficient to support the determination, especially in light of the evidence to the contrary)). Further, the ALJ erroneously failed to consider A.H.N.'s ODD, PTSD and depression. The Court will not engage in a discussion which is a task properly left to the Commissioner; however, given the similarities between A.H.N.'s alleged impairments and symptoms and the criteria of Listings 112.04 and 112.08, the ALJ should have given some explanation as to why the impairment(s) do(es) not meet the criteria. *See Hamedallah*, 2012 WL 2403518, at *9-10.

Accordingly, remand is appropriate so that the ALJ may explain his findings in the first instance regarding whether each of A.H.N.'s alleges impairments is severe, and then whether any severe impairment meets or medically equals a Listing.

**B. Whether the ALJ's Conclusion that A.H.N.'s Impairment Did Not Meet or Functionally Equal a Listing is Supported By Substantial Evidence.**

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 11 at 19-21 [Pl.'s Mem. of Law].) The Court would add the following analysis.

Plaintiff acknowledges that functional equivalence of a Listing is found where there is a finding of an extreme limitation in one domain of functioning or a finding of a marked limitation in two domains. *See* 20 C.F.R. § 926a(a). Here, the ALJ found that A.H.N. has a marked limitation in attending and completing tasks, a less than marked limitation in acquiring and using information, interacting and relating with others, and caring for oneself, and no limitation in moving about and manipulating objects and health and physical well-being. (T. 27-31.) Plaintiff contends that the ALJ committed reversible error in failing to find that A.H.N. has marked impairments in the domain of acquiring and using information, which, when coupled with the ALJ's finding that A.H.N. has marked impairments in the domain of attending and completing tasks, would result in a finding of disability.

In assessing a school-age child's functioning in the domain of acquiring and using information, the ALJ considers how well the child learns information, and how well he uses the information he has learned. The regulations provide that a school-age child "should be able to learn to read, write, and do math, and discuss history and science" and "should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with

individuals or groups, by asking questions and expressing [his or her] own ideas, and by understanding and responding to the opinions of others." 20 CFR § 416.926a (g)(2)(iv). Some examples of limited functioning in this domain are where the child:

> (i) [does] not demonstrate understanding of words about space, size, or time; e.g., in/under, big/little, morning/night[;]
> (ii) []cannot rhyme words or the sounds in words[;]
> (iii) [has] difficulty recalling important things [] learned in school yesterday[;]
> (iv) [has] difficulty solving mathematics questions or computing arithmetic answers [;]
> (v) talk[s] only in short, simple sentences and ha[s] difficulty explaining what [he or she] mean[s].

20 C.F.R. § 416.926a (g)(3).

Here before setting forth his conclusions regarding A.H.N.'s functional limitations, the ALJ discussed the supporting evidence in the record. First, he acknowledged that A.H.N.'s alleged impairments include ADHD, ODD, PTSD and depression. The ALJ went on to note the allegations of Plaintiff regarding A.H.N.'s destructive behaviors as well as lack of impulse control, oppositional actions and emotional lability, but also noted that according to a March 9, 2009 treatment note from A.H.N.'s treating pediatrician, James P. Gaylord, M.D., Plaintiff reported that A.H.N. was doing well at school and teachers were pleased with his work and behavior.

The ALJ also considered Dr. Gaylord's treatment notes from March and August of 2009, which he says reflect that A.H.N.'s active problems include anxiety, ADHD and chronic PTSD. In addition, the ALJ noted that A.H.N. had been receiving group and family therapy at the Saratoga Center for the Family from July 2006 through October 2008, and that he resumed services in March 2011, receiving art therapy, which Plaintiff reported she believes is helping.

11

In addition, the ALJ considered A.H.N.'s records from the 2010-2011 school year, which reference a 2007 diagnosis of PTSD, anxiety syndrome and ADD, and a psychological evaluation which revealed that A.H.N. has average verbal comprehension and processing speed and low average perceptual reasoning and working memory and a low average full scale IQ.

Finally, the ALJ recited the findings of impartial medical expert Allan M. Rothenberg, M.D., who reviewed the entire record and opined that A.H.N. has "a marked limitation in attending and completing tasks, a less than marked limitation in acquiring and using information, interacting and relating with others, and caring for [oneself], and no limitation in moving about and manipulating objects, and health and physical well-being." (T. 27.) The ALJ noted that Dr. Rothenberg's opinion "is consistent with and supported by the school and medical records." (*Id.*) The ALJ then went on to find that A.H.N.'s impairment does not functionally equal a Listing, in accordance with Dr. Rothenberg's opinion. (T. 27-32.)

Plaintiff argues that Dr. Rothenberg, a non-examining physician, had an incomplete set of records from which to form his opinion, and accordingly, the ALJ erred in relying on his opinion. Dr. Rothenberg's report lists his opinion of A.H.N.'s level of function by domain. (T. 263.) In support of his conclusion that A.H.N. has a less than marked limitation in acquiring and using information, Dr. Rothenberg relies on an August 2009 teacher questionnaire, which reflects that A.H.N., who was in a third grade regular education class at the time, was performing math and reading at a third grade level, but writing at a second grade level. To be sure, the record is devoid of any school records from August 2009, so the Court is unable to verify Dr. Rothenberg's report of A.H.N.'s third grade performance. However, the record does reflect that in the fourth grade, according to A.H.N.'s TOWRE test results, he was reading below grade

12

level . (T. 224.) Also, while he was in the fourth grade, WIATT-II testing revealed that A.H.N.'s reading was in the average range, while his math and writing were in the low average range. (T. 220-222.) Further testing that same year revealed that A.H.N. continued to fall within the low average range of cognitive functioning. (T. 189-195.) Also, while he was in the fourth grade, teacher notes reflect that A.H.N. was having great difficulty in math and was functioning at the level of second grade plus four months. (T. 213.) Given the conflicting evidence regarding A.H.N.'s school performance, it was error for the ALJ to rely on Dr. Rothenberg's opinion regarding A.H.N.'s level of limitation in the area of acquiring and using information.

Accordingly, remand is appropriate so that the ALJ may decide, after a review of the entire record, whether any of A.H.N.'s severe impairments meets or functionally equal a Listing.

C. **Whether the ALJ's Decision is Against the Substantial Weight of the Evidence and is Incorrect as a Matter of Law Because he Failed to Develop the Record and Failed to Properly Explain his Determination Regarding Plaintiff's Credibility.**

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 11 at 22-24 [Pl.'s Mem. of Law].) The Court would add the following analysis.

Plaintiff argues that the ALJ failed to fully develop the record regarding, or to seek clarification of, the impact of A.H.N.'s impairments on his cognitive/communicative functioning for purposes of medically meeting or equaling a Listing, or on his functioning in the domain of acquiring and using information for purposes of establishing functional equivalence of a Listing. Plaintiff also argues that the ALJ failed to discuss the credibility of her testimony or to sufficiently explain why her assessment of A.H.N.'s functioning was rejected.

13

### 1. The ALJ Erred in Failing to Properly Develop the Record

Specifically, the record contains references to two physicians from whom no treatment records were requested by the Commissioner. A.H.N.'s treating pediatrician, Dr. Gaylord, noted on August 9, 2009, that A.H.N. had not seen Dr. VanAntwerpen since February 2010. (T. 282.) Records from A.H.N.'s school reflect that Plaintiff took A.H.N. to Dr. VanAntwerpen, who prescribed Vyvanse, which is used to control symptoms of ADHD. (T. 306.) Moreover, Plaintiff provided Dr. VanAntwerpen's name and address to the Commissioner at the time of her appeal. (T. 171.) In addition, A.H.N.'s school records reflect that in January 2007, Dr. Scherer from Saratoga Center for the Family diagnosed A.H.N. with PTSD, anxiety and ADHD. (T. 215.) To be sure, while the Commissioner sought and received records from Saratoga Center for the Family, those records do not include any treatment notes from Dr. Scherer, or any reference to Dr. Scherer or A.H.N.'s diagnoses. (T. 271-272, 290-294, 303.) In addition, Dr. Gaylord's treatment notes from A.H.N.'s August 31, 2009 visit reflect references to an unnamed psychologist and an unnamed psychiatrist that were reportedly treating A.H.N.

Since Social Security proceedings are non-adversarial in nature, the ALJ has a "'duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir .2004) (quoting *Sealey v. Barnhart*, 276 F.3d 1, 8 (1st Cir. 2001)). The ALJ is under this obligation even when the claimant is represented by counsel. *See Prates v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) ("[The ALJ [must] affirmatively develop the record ... even when, as here, the claimant is represented by counsel.") (quotations and citations omitted)).

Here, the ALJ failed to seek clarification from Saratoga Center for the Family, and failed to request records from Dr. VanAntwerpen. The ALJ also should have sought clarification from Dr. Gaylord or Plaintiff regarding the referenced psychologist/psychiatrist as a potential medical source. Given the inconsistent evidence in the record, the ALJ's failure to seek clarification and fully develop the record is error and warrants remand.

### 2. The ALJ Failed to Properly Assess the Plaintiff's Credibility

In addition to Plaintiff's testimony at the hearing regarding A.H.N.'s functional limitations, the record also includes a letter from Plaintiff detailing her observations of A.H.N.'s disruptive and oppositional behaviors. Also in the record is a Function Report completed by Plaintiff. (T. 144-153.)

As a fact finder, the ALJ is free to accept or reject the testimony of a claimant's parent. *See Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988). However, an ALJ's finding that a witness lacks credibility must be "set forth with sufficient specificity to permit intelligible plenary review of the record." *Id*, at 261. Accordingly, the ALJ should "make] clear, both to the individual and to any subsequent reviewers, the weight [he] gave to the individual's statements and the reasons for that weight." *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 546 (S.D.N.Y. 2004).

Here, the ALJ acknowledged Plaintiff's reports and correspondence, but cited to only one report from Dr. Gaylord, which reflected Plaintiff's report that A.H.N. was doing well at school and that teachers were pleased with his work. However, the ALJ did not make clear what weight, if any, he gave to Plaintiff's reports, nor did he explain his reasoning.

15

Moreover, in the same treatment note, dated March 9, 2009, where it is reflected that Plaintiff reported that A.H.N. was doing well in school, Dr. Gaylord also noted Plaintiff's report that A.H.N. "has a loss of appetite, seems tired and flat all the time, and then has behavioral issues with emotional lability when he gets home from school." (T. 249.) On August 31, 2009, Dr. Gaylord noted Plaintiff's report that A.H.N. "[h]as been having ongoing behavioral issues" and on August 4, 2010, that A.H.N. has been having "difficulties with outbreaks of anger at home" and "does not seem to have control over his emotions." (T. 237, 280.) Therefore, given the evidence in the record supporting Plaintiff's reports, the ALJ's failure to explain the weight given to Plaintiff's testimony and his reasons for assigning that weight is error and warrants remand.

Because there are ambiguities and inconsistencies in the record regarding A.H.N.'s impairments, functional abilities and limitations, which should have been addressed by the ALJ, this matter must be remanded. Granted, Plaintiff argues that the unfavorable decision of the Defendant should be reversed rather than remanded. However, reversal and remand for calculation of benefits is warranted only when there is persuasive proof of disability in the record and further development of the record would not serve any purpose. *See Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999). Alternatively, where, as here, further development of the record, as well as findings and explanations would clarify the ALJ's decision, remand of the matter to the agency in order for discerned errors to be addressed is more appropriate. *See id.*, at 82-83.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **<u>DENIED</u>**; and it is further

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **REMANDED** to the Commissioner pursuant to 42 U.S.C. §§ 405(g) 1383(c)(3) and for further proceedings consistent with this Decision and Order.

Dated: October 26, 2012
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge